```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                      CAMDEN VICINAGE
```

| | |
|---|---|
| FRANCES JEAN SMITH-SERIGHT, | |
| Plaintiff, | Civil No. 18-4269(RMB) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

APPEARANCES:

POLONSKY & POLONSKY
By: Alan Polonsky, Esq.
512 S. White Horse Pike
Audubon, New Jersey 08106
       Counsel for Plaintiff Frances Jean Smith-Seright

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Rachel Licausi, Special Assistant U.S. Attorney
300 Spring Garden Street
Philadelphia, Pennsylvania 19123
       Counsel for Commissioner of Social Security

**RENÉE MARIE BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Frances Jean Smith-Seright (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits. For the reasons set forth below, the Court will **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for proceedings consistent with this Opinion.

I.  **PROCEDURAL HISTORY**

On December 30, 2013, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. In her application, Plaintiff alleges disability, beginning January 1, 2010, based on her severe obesity, asthma, depression, and bipolar disorder. Plaintiff also allegedly suffers from posttraumatic stress disorder ("PTSD"), learning disabilities, and has a history of substance abuse. Plaintiff's claim was initially denied on May 15, 2014, and again denied upon reconsideration on August 21, 2014. [Record of Proceedings ("R.P.") at 92-138]. On March 30, 2017, Plaintiff testified at a formal hearing before Administrative Law Judge Arthur Patane. At the hearing, Plaintiff was represented by an attorney.

On August 8, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits, based on the ALJ's determination that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [R.P. at 23]. The Appeals Council denied Plaintiff's request for review on February 6, 2018, rendering the ALJ's decision as final. [R.P. at 1-3]. Plaintiff now seeks this Court's review.

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228

3

F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff is a 34

year-old female, but was 24 years old on the alleged disability onset date and 32 years old at the time of her hearing before the ALJ.  Plaintiff attended some high school, but neither graduated nor earned a GED.  Although Plaintiff worked for a few months as a "parent coach" for the Board of Education in May 2011, she has almost no work experience at all, let alone past relevant experience.

### A.  *Plaintiff's Medical History and Testimony*

According to medical records, Plaintiff suffers from a variety of physical and mental impairments.  Notably, medical records indicate that Plaintiff is severely obese and suffers from asthma, bipolar disorder, depression, PTSD, learning disabilities, and substance abuse.  At a doctor's appointment on January 10, 2010, around the alleged onset date, Plaintiff was measured at 5'6" and weighed 364 pounds. [R.P. at 804].  On July 8, 2013, Plaintiff weighed 405 pounds. [Id. at 947].  By January 10, 2017, shortly before Plaintiff's administrative hearing, Plaintiff weighed 461 pounds. [Id. at 1297].  Since 2015, Plaintiff has been attending a program at Wiley Christian Behavioral Management Services ("Wiley") in relation to her mental health issues, including her bipolar disorder, depression, and substance abuse. [Id. at 42-44].  Plaintiff's

substance abuse relates to past use of marijuana, alcohol, and other street drugs.

Plaintiff testified at the administrative hearing that she left high school when her son was born and was unable to complete her degree when she tried to return afterwards. Plaintiff states that she has struggled to find jobs or GED programs that will accept her, given her schedule for mental health treatment during the day at Wiley.

At the administrative hearing, Plaintiff described the ways her obesity impacts her daily life. Plaintiff testified that she has one specific chair in her house that will support her weight, as she has previously broken through chairs. Plaintiff has difficulty standing for more than 30 minutes at a time and often needs her son's assistance to complete routine tasks, such as cleaning the apartment, carrying heavy groceries, putting on socks, and lifting pots of water while cooking. Plaintiff states that she can shower on her own because her shower has a bar that she can grab onto when she climbs into the tub. Plaintiff testified that she tried to exercise at a gym to lose weight, but injured her knee and felt that it did not heal enough for her to resume exercising.

According to psychological evaluation performed by Dr. Kenneth Goldberg, Ph.D. on May 19, 2010, Plaintiff tests in the low-average range of intellectual functioning. [See R.P. at 662-

7

669]. Notably, Dr. Goldberg observed significant disparities in test scores in Plaintiff's reading, as compared to her writing ability, suggesting learning disorders. Dr. Goldberg noted that he was providing Plaintiff with a form authorizing accommodations for GED testing, but noted that "it seems likely that her skills are short of passing that test, even with the accommodations she seeks." [Id. at 665]. Dr. Goldberg concluded that Plaintiff was "an extremely depressed person who out to be in therapy." Regarding Plaintiff's PTSD, Dr. Goldberg found that "it is likely that the trauma goes beyond what she reports... it is likely that past events continue to have an impact in the relationships she has, at home and with the world." [Id.] Although Dr. Goldberg noted that Plaintiff "gives some indication that her true preference is to stay home with her child rather than go out to work," he also stated that "[g]iven her weight and her asthma, it is probably best for her to have work which is not too physically demanding." [Id. at 666].

### B.  *The ALJ's Decision*

In his decision, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from her alleged onset date through the date of the ALJ's decision. The ALJ found that Plaintiff suffers from severe impairments, but

8

held that she retained a Residual Functional Capacity ("RFC") to perform unskilled light work in jobs that exist in significant numbers in the national economy.

At Step One of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2010. [R.P. at 17]. At Step Two, the ALJ determined that Plaintiff's "severe" impairments were "obesity, asthma, depressive disorder, posttraumatic stress disorder, learning disorder, and history of substance use disorder." [Id.].

At Step Three the ALJ determined that Plaintiff did not have an impairment that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At Step Four, the ALJ determined that the Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to performing the simple, routine tasks associated with unskilled work at an SVP 1 or 2 and should not be exposed to concentrated levels of respiratory irritants.

[R.P. at 18]. In making this decision, the ALJ considered Plaintiff's "own reports and allegations," which the ALJ found to be "partially, though not entirely consistent with the medical evidence." [R.P. at 22]. Although the ALJ noted that Plaintiff's impairments were

9

"well-documented," the ALJ concluded that "to the extent that she asserts that these conditions prevent her from performing any work on a sustained, consistent basis, her allegations are undermined by her indication to an examining source that staying home from work was merely a 'preference.'" [Id.].

IV. **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to adequately account for the limitations posed by Plaintiff's severe obesity and her mental limitations in formulating her RFC. This Court agrees with Plaintiff.

With respect to RFC assessments, an ALJ is not required to include every alleged limitation in their hypotheticals and RFC assessments. See O'Bryan v. Colvin, 2014 WL 4649864, at *6 (W.D. Pa. Sept. 16, 2014). Rather, the ALJ's responsibility is to "accurately convey" only "credibly established limitations" which "are medically supported and otherwise uncontroverted in the record." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.2003).

Plaintiff testified at the administrative hearing that her obesity causes significant limitations in her day-to-day life. However, the ALJ's opinion barely discusses Plaintiff's obesity.

As noted by in Plaintiff's brief, Plaintiff suffers from severe obesity and would be considered "morbidly obese" at all times since the alleged onset date.

The ALJ mentions that he considered SSR 02-1P, which pertains to the limiting impact of obesity, but the ALJ does not apply the SSR or discuss those limitations in the opinion. In relevant part, SSR 02-1P mandates that an RFC assessment should include an evaluation of "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." The Ruling also advises that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." To the extent the ALJ may have considered these factors, such considerations are not articulated in the opinion in a manner that allows this Court to conduct a meaningful judicial review.

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). In Diaz, the Third Circuit reversed a district court and directed that a Social Security matter be

remanded for further proceedings, and went on to hold that "absent analysis of the cumulative impact of [plaintiff's] obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." Id. & n.3.

The lack of any discussion about potential limitations posed by Plaintiff's obesity is not a harmless error, especially considering the ALJ's RFC determination.  Notably, the definition of "light work" calls for "frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing." 20 CFR 404.1567(b) and 416.967(b).  The ALJ also did not solicit testimony from a vocational expert as to whether Plaintiff's limitations would impact her ability to find regular employment.  Absent a more thorough discussion of Plaintiff's physical limitations related to her obesity, as well as how it interacts with her asthma, depression, and other impairments, the Court cannot find that the ALJ's opinion is supported by substantial evidence. See Garcia-Estrada v. Comm'r of Soc. Sec., 2017 WL 498714, at *4 (D.N.J. Feb. 7, 2017)(remanding a case because "the ALJ's failure to properly analyze [plaintiff's] obesity necessarily led to improper conclusions concerning her RFC"); Ward v. Comm'r of Soc. Sec., No. 13-763, 2015 WL 5823061, at *5-6 (D.N.J. Oct. 1, 2015)(remanding a Social Security matter based on the ALJ's deficient analysis of the plaintiff's obesity in the RFC portion

of the Decision, which as a result evaded meaningful judicial review); Standowski v. Colvin, 2015 WL 404659, at *12–13 (D.N.J. Jan. 29, 2015)(remanding a Social Security matter because the ALJ "barely discussed" the plaintiff's severe impairment of obesity, and "the ALJ's residual functional capacity determination is silent on obesity").

This Court does not express an opinion as to whether Plaintiff's impairments meet a listing or render her disabled, as defined by the Act. However, the Court finds that the ALJ committed a reversible legal error in failing to adequately address Plaintiff's possible limitations related to her severe obesity in formulating her RFC. On remand, the ALJ must discuss Plaintiff's obesity under the framework set forth in SSR 02-1P and fully develop the record regarding Plaintiff's ability to perform light work.[1]

---

[1] As the Court finds that the ALJ's RFC determination did not sufficiently address Plaintiff's obesity, this Court need not separately reach the issue of whether the ALJ adequately considered Plaintiff's mental limitations. Indeed, to comply with SSR 02-1P's instructions, the ALJ must necessarily discuss the impact of Plaintiff's obesity on her other impairments, including her mental limitations. The Court notes that this additional analysis will almost certainly require a more thorough discussion of Plaintiff's mental limitations.

## V. CONCLUSION

For the reasons set forth above, the Court will **VACATE** the ALJ's decision and **REMAND** for proceedings consistent with this Opinion. An appropriate Order shall issue on this date.

DATED: April 30, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE